**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FSO, LLC *d/b/a* Stone Church,<br>    *Plaintiff*,<br>  v.<br>StubHub, Inc.,<br>    *Defendant* | **Case No.: 26-cv-6823**<br><br>**COMPLAINT FOR EQUITABLE RELIEF PURSUANT TO SECTION 34 OF THE LANHAM ACT, 15 U.S.C. §§ 1116 – 1117, FOR VIOLATIONS OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. §** |

Plaintiff FSO, LLC *d/b/a* Stone Church ("Stone Church" or "Plaintiff") seeks equitable relief regarding the false advertising of event tickets re-sold on the platforms (website and applications) operated by Defendant StubHub, Inc. ("StubHub"), including that StubHub: (a) ensure the accuracy of the advertising on StubHub's platforms stating that available tickets to a given event are scarce or otherwise limited, by clearly and conspicuously[1] disclosing the precise number of event tickets available on its platforms; (b) clearly and conspicuously disclose that the event tickets advertised on its platforms, and any scarcity of such tickets, represent the tickets available on StubHub's platforms only, and does not represent the totality of tickets available for that event; (c) clearly and conspicuously disclose the primary seller's all-in price (the "all-in price," which is the face value of the ticket plus any necessary fees) of tickets being advertised and resold on StubHub; and (d) clearly and conspicuously disclose that tickets listed on StubHub may also be available from their primary sellers (like Stone Church).

## I.   <u>NATURE OF THE ACTION</u>

1.   Stone Church operates an entertainment venue in a fully-renovated Victorian Gothic church located in Brattleboro, Vermont.  There are venues like Stone Church in nearly every town and city in the country: independently-owned,[2] small and mid-sized entertainment venues showcasing both local and touring artists who do not yet have the audience to fill stadiums,

---

[1] The phrase "clearly and conspicuously" as used herein is the phrase as defined in the Federal Trade Commission's ("FTC") Rule on Unfair or Deceptive Fees, 16 C.F.R. Part 464, § 461.1 (available at https://www.ecfr.gov/current/title-16/chapter-I/subchapter-D/part-464 (last visited August 6, 2026)), which was incorporated into the April 10, 2026 Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief between StubHub Holdings, Inc. and the FTC, in *FTC v. StubHub Holdings, Inc.*, ECF No. 6 in Case 1:26-cv-02924-KPF (S.D.N.Y.).

[2] Venues like Stone Church are colloquially known as "independent" venues because they are owned and operated independently from the large corporations, entertainment conglomerates, and large-venue (*e.g.*, arenas and stadiums) operations like Live Nation Entertainment, Inc. (which operates Ticketmaster, L.L.C., the nation's largest ticketing company).

or who are not inclined to perform in such settings.

2.      Plaintiff brings this action to stop the continuing injury caused by Defendant StubHub's violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), for the false and misleading advertising of event tickets on its platforms.  If StubHub's false advertising practices are not enjoined, they will continue to injure Plaintiff's commercial interests by diverting ticket sales from Stone Church to StubHub, and diminishing the goodwill and reputation that Plaintiff has cultivated among its customers.

3.      Plaintiff's immediate and irreparable injuries have no adequate remedy at law.[3] Stone Church is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a), and equitable recovery pursuant to 15 U.S.C. § 1117(a) of: StubHub's profits, and up to three times the damages Plaintiff has sustained, in amounts to be assessed by the Court; the costs of this action; and Plaintiff's reasonable attorney fees.

## II.      JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over Plaintiff's Lanham Act claims pursuant to 28 U.S.C. § 1331.  This Court has personal jurisdiction over Defendant StubHub because StubHub maintains its headquarters and principal place of business in New York, New York, within this District, and because the conduct giving rise to Plaintiff's claims occurred in substantial part in New York, New York, within this District.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), as Defendant StubHub is based in New York, New York, and a substantial part of the actions, omissions and deceptive practices giving rise to Plaintiff's claims occurred within this District.

---

[3] Aspects of the false advertising at issue here also violate Vermont's recently-enacted consumer-protection statute regarding ticket resale practices for Vermont events, 2026 Vt. Acts & Resolves No. 109 (H.512), which is enforced only by the state's Attorney General, with no private right of action.

III.    **PARTIES**

6.    Plaintiff FSO, LLC d/b/a Stone Church is a Vermont limited liability company with its principal place of business in Brattleboro, Vermont.

7.    Stone Church is the "primary" seller of the event tickets it lists and sells on its own website, where tickets to events at the venue are sold directly to consumers at their all-in prices.

8.    Tickets to events at Stone Church are also advertised, listed and re-sold on StubHub's platforms.  StubHub's false advertising of those event tickets as alleged herein currently threatens, and will continue to threaten, Plaintiff's commercial interests by diverting ticket sales to StubHub that would otherwise be made to Plaintiff, and deterring and/or steering consumers away from buying all-in-priced tickets sold directly by Stone Church.  Plaintiff is also suffering, and will continue to suffer, harm to its reputation and goodwill with customers[4] because of StubHub's false and misleading advertising of ticket availability.  As such, Plaintiff's injuries fall squarely within the zone of interests protected by the Lanham Act.

9.    Defendant StubHub, a wholly-owned subsidiary of publicly-held Delaware corporation StubHub Holdings, Inc., is a Delaware corporation headquartered within this District at 175 Greenwich Street, 59th Floor, New York, New York 10007.  StubHub's intended audience is buyers and potential buyers of event tickets, and the company operates both a consumer-facing website (www.stubhub.com) and an application (offered on both Apple's App Store and Google's Play store) listing tickets to concerts, sports matches, comedy shows and a range of other events. StubHub facilitates transactions between resellers (who buy or purport to have bought tickets directly from a primary seller) and ticket-buyers by advertising event listings and ticket prices, processing payments, and coordinating ticket delivery from reseller to buyer.

---

[4] Stone Church also has a significant commercial interest in preserving its reputation among artists for offering them a reliable, revenue-generating venue.

3

## IV.    FACTUAL ALLEGATIONS

### A.  The StubHub Model

10.    Defendant StubHub operates the country's largest online secondary ticket marketplace, providing digital platforms through which third-party resellers list for resale tickets for concerts, sporting events, theatrical performances, and other events.  Consumers visiting StubHub's website or mobile applications search for a particular event or artist, review the available listings, prices and related information advertised by StubHub, select the ticket they wish to buy, and execute the transaction on StubHub's checkout page.  StubHub collects fees for each such transaction.  According to its parent company's public filings, StubHub records revenue for those transactions at the point in time when the sale is executed – before any ticket is actually transferred from the reseller to the buyer.

11.    With certain very limited exceptions, StubHub does not own the tickets advertised on its platforms.  In reality, many of the entities reselling event tickets on StubHub's platforms do not own them either – not at the time those tickets are listed and advertised, and not at the time those tickets are sold to consumers.  This "list-first, sell-before-acquire" practice is known as "speculative" or "spec" selling.  While StubHub's policies nominally prohibit resellers from spec-selling, those policies are rarely if ever enforced, despite the company being fully aware of this practice.  Spec-selling has been and continues to be widespread across StubHub's platforms.

12.    For example, on a test-purchase made on StubHub on July 14, 2026 of a ticket to a July 22, 2026 event at the Stone Church, based on a comparison between the ticket barcode delivered to the StubHub buyer against Stone Church's primary-market transaction records, the reseller did not acquire the corresponding ticket from the venue's primary ticketing system until approximately 49 hours after executing the StubHub sale.  This is an example of a transaction where the reseller did eventually buy directly from Stone Church the ticket that StubHub was

4

advertising. But in many cases, StubHub's advertising of speculative tickets do not result in an actual ticket sale. The fact that spec-sale tickets advertised on StubHub are not actually legitimate – a speculative ticket is the same as no ticket at all, from the venue's perspective, because it has not actually been bought – threatens lost sales and reputational harm for Plaintiff.

**B. Overview of StubHub's False and Misleading Advertising**

13. StubHub's false and misleading advertising statements are widely-disseminated across its platforms and are intended to, and actually do, influence consumers' buying decisions by purposefully creating and imposing impressions of false scarcity and/or urgency into the purchasing process, steering potential buyers away from Stone Church (where tickets are sold at their all-in price) and towards StubHub, where the advertised ticket prices are effectively untethered to the laws of supply and demand.

14. The false advertising mechanisms and their content as alleged herein are not created or authored by the third-party resellers. The false advertising and content at issue here is created and authored by StubHub itself, and is a product of the company's organized efforts to manipulate ticket buyers' purchasing decisions through deception or confusion, all in order to generate maximum transaction fees on every ticket resold on its platforms.

15. StubHub's false advertising includes, but is not limited to, the following mechanisms (which are shown below in screenshots comparing, in real-time, the differences between the false advertisements on StubHub on the one hand, and reality on the other):

**The "False Scarcity" Tactic**

16. StubHub successfully employs a tactic called "False Scarcity." This tactic is based on a fabricated impression that tickets will shortly be unavailable when there is, in reality, sufficient inventory, adding phrases such as "Only 1% of tickets left!" or "Last Tickets!" to ensure that buyers buy then and there, at whatever price StubHub advertises, or lose out on seeing their

favorite band, comedian, or poet.  The False Scarcity tactic is literally false, as shown in the below

screenshots, which compare, in real-time, the price and availability of event tickets for the same

event: first on the primary platform (Stone Church's website), and then on the StubHub website.

17.    The venue's all-in price on its website is $22, and there are 195 general-admission

("GA") tickets available for sale there:



18.    Contemporaneously on StubHub, the ticket price for the same July 22, 2026

Twisted Teens show at Stone Church is $165, and the advertising on its user interface ("UI")

falsely advertises that GA tickets are getting scarce:





19.    Based on Plaintiff's experience, StubHub undertakes no effort to obtain actual ticket availability or inventory levels from the venue itself.  StubHub advertises ticket availability that it has no incentive to find out, let alone verify, are actually available.  And that makes sense in the StubHub business model, because the company recognizes revenue as soon as a ticket sale is executed, regardless of whether the reseller possesses the ticket at that point in the transaction. Knowing, verifying and advertising the number of tickets actually available for a given event would threaten the revenue StubHub generates from the consumer deception and/or confusion wreaked by its false advertising tactics.

20.     StubHub's platforms make only miniscule efforts to qualify their advertising of available tickets.  StubHub's inconspicuous, unclear and easily-missed qualifiers as to available ticket quantity are buried using a "hover-and-click" tooltip.  As shown in the screenshot below, the tooltip is a comparatively miniscule "ⓘ" icon link adjacent to the advertising of available tickets that pops up only after a buyer first hovers her mouse pointer over it and then clicks it – which does little or nothing to change a buyer's net impression from this false advertising that tickets are just plain scarce everywhere, rather than scarce only on StubHub's platforms.

21.     The "ⓘ" tooltip itself measures just 16 by 16 pixels on screen – smaller than the minimum interactive-target sizes prescribed by the World Wide Web Consortium's Web Content Accessibility Guidelines 2.2 at both the AA (24×24 pixels) and AAA (44×44 pixels) conformance levels[5] – and is announced to buyers only by this generically-labeled "ⓘ" tooltip, and conveying nothing about actual ticket availability:



---

[5] *See* https://www.w3.org/TR/WCAG22 (last visited August 5, 2026).  According to its website, the non-profit World Wide Web Consortium "develops standards and guidelines to help everyone build and enjoy a web based on the principles of accessibility, internationalization, privacy and security."  *See* https://www.w3.org (last visited August 6, 2026).



22.    StubHub's use and placement of these types of inconspicuous hover-and-click tooltips shows that it understands the distinction between tickets that are "scarce on our site" and tickets that are simply "scarce for this event;" StubHub's tooltip language – *e.g.*, "Last remaining listing of 1 ticket in this section currently available for sale on our site" – captures that exact distinction.  But those qualifiers are used only in a hover-state on a single module of the purchasing page while StubHub willfully, prominently and unqualifiedly advertises the event's ticket scarcity everywhere else – despite being unwilling to verify and clearly indicate the number of genuinely-available tickets, including those available from Stone Church.

**The "False Superlative" and "Fictitious Former Price" Tactics**

23.    Similarly, StubHub creates and advertises its listings with the "False Superlative" tactic, whereby the UI employs a false perception that there are no cheaper tickets available, which, among other things, diverts buyers (both price-sensitive ones and those less so) away from the Stone Church website: "Lowest price!  Only 3 tickets left at this price in this section [. . .] These tickets are almost yours!"  StubHub's False Superlative advertising is impliedly false because it gives buyers the net impression that the advertised ticket price is the lowest or best price for that specific event, as seen in the below comparison of a ticket purchase for the August 1, 2026 Billie Marten show at Stone Church on Plaintiff's website, and then on StubHub.

24.    The venue's GA ticket price on Plaintiff's website is $31:



25.    Contemporaneously on StubHub, the buyer is told that the StubHub price of $49 is the lowest, or best, available for that show on that date at the Stone Church:



26.    There is also the "Fictitious Former Price" mechanism.  The misleading Fictitious Former Price ruse artificially inflates the perceived price level of a given event and then – to ensure that even the most price-sensitive buyers get their tickets on StubHub and not on the Stone Church website – strikes through that price and advertises a lower ticket price adjacent to the higher,

struck-out "original" price (*e.g.*: "$105 – Now only $70!").  Because StubHub never discloses the all-in price of an event ticket as listed on the primary seller's platforms, the signal to consumers is that they are getting a bargain on StubHub.  And even for the less price-sensitive buyer, the messaging in the Fictitious Former Price signal is deceptive and confusing, because the ostensible "discount" off of StubHub's "original" price is in reality no bargain at all when compared to the ticket's all-in price (which, again, is not disclosed on StubHub's platforms).

27.    StubHub's Fictitious Former Price advertising is impliedly false because it gives buyers the mistaken impression that they are making the right buying decision by purchasing tickets on StubHub at bargain prices.  But that is not the reality of that transaction, as seen in the below comparison of a ticket purchase for a Stone Church show on Plaintiff's website, and then on StubHub.

28.    The venue's ticket price is, of course, still $31:



29.    Contemporaneously, the StubHub platform's signal to the buyer is the message that she's now getting a bargain deal on her tickets to the Billie Marten show at Stone Church.  The tickets for that show on that date are now down from the "original" StubHub price of $79 to the "discounted" StubHub price of $47.  Without a disclosure of the ticket's all-in price available on the primary seller's website/platforms: (a) both the "original" and "discounted" StubHub prices are high enough – 155% and 52%, respectively, higher than the ticket's all-in price on the Stone

11

Church website – to deter the most price-sensitive buyers from even buying a ticket at all; or (b) the less price-sensitive buyer is deceived into the impression of a bargain.



## C.    The Continuing Harmful Impact of StubHub's False Advertising

30.    The injurious effects on Stone Church of StubHub's false advertising strategy, including, but not limited to, its False Scarcity, False Superlative and Fictitious Former Price mechanisms, are considerable.  StubHub's falsehoods have injured and will continue to injure Stone Church in the form of direct diversion of ticket sales from Stone Church to StubHub, along with a continuing loss of the customer goodwill and reputation that Plaintiff has developed.

31.    StubHub is capable of ensuring that its advertising reflects an accurate picture of ticket availability, and the company knows or should know that such accurate-availability disclosures on its platforms are feasible.  Indeed, in connection with regulatory scrutiny of consumer-protection violations in the United Kingdom, StubHub (UK) Ltd. in August 2020 agreed with that country's Competition and Markets Authority ("CMA") to require its U.K. platforms to, among other things: "remove and not replace any ticket selection and purchasing messages that are misleading;" "disclose clearly and prominently that the tickets available on the website represent the tickets available for sale on the website and does not represent the totality of tickets available for the event;" and "ensure that tickets related to sales for or on behalf of the primary

12

market [*i.e.*, venues] that are listed on the website are clearly and prominently identifiable as such, and are distinct from tickets that are offered for resale on the event page and . . .at least one of the first individual ticket listing page, the final check-out page (or their equivalents) or another location on the website prior to the purchase of a ticket."[6]

32.    Stone Church is seeking here the same type of disclosures and information StubHub's legacy U.K. operation agreed with the CMA to post on (or remove from) its platforms in the U.K.  There is no reason – other than the company's perpetuation of its own highly-profitable false-advertising strategy – that StubHub cannot do so now in the United States.

### i.    Sales Suppression and Direct Diversion of Sales from Stone Church to StubHub

33.    The StubHub platforms' failure to disclose or otherwise advertise a ticket's all-in price, and/or that tickets may be available on the primary seller's platforms, when coupled with "lowest price" and "tickets are getting scarce" false advertising mechanisms, suppress Stone Church's ticket sales by deterring buyers who would have – but for StubHub's tactics – bought the tickets from Stone Church at their all-in price.  The impressions of false scarcity, urgency, or bargain, combined with both spec-selling and a lack of disclosure that tickets may be available on the Stone Church (that is, primary) website, falsely gives buyers the impression that there is no opportunity or need (let alone time or inventory) to buy the tickets from the primary seller.   And that steering results in lost sales and revenue for Stone Church.

### ii.    Loss of Plaintiff's Direct Relationships with its Customers

34.    Every resale of Stone Church event tickets on StubHub severs Plaintiff's

---

[6]https://assets.publishing.service.gov.uk/media/5f3bac268fa8f51744ded00e/StubHub_undertaking_FINAL_-_web_-.pdf (last visited August 6, 2026).  In 2021, StubHub (UK) Ltd. was divested from the entity now known as StubHub Holdings, Inc., in connection with the CMA's approval of a merger between StubHub Holdings, Inc. and Viagogo.

relationship with the actual fan attending the event. When a reseller buys a ticket from Stone Church in order to fulfill a transaction the reseller has already executed on StubHub, the reseller – not the fan – becomes the venue's buyer-of-record. Stone Church never learns the fan's identity or contact information, and cannot include the fan in its marketing and community communications. And most consequentially for the fan-venue relationship, Plaintiff has no means of reaching the fan directly when the event is changed, delayed, or cancelled.

35.    This can and does result in consumer confusion – confusion that is only exacerbated when StubHub's false advertising is driving the consumer's purchasing decision.  For example, when an event at Stone Church is cancelled or postponed, common courtesy and good business sense obligate Plaintiff to promptly reach out to the event's attendees to tell them.  But when the buyer-of-record is a reseller using a pseudonym and a temporary free email address, and with StubHub's policies preventing any direct contact between reseller and buyer, such outreach is impossible.

36.    So, when a fan bought his ticket on StubHub because he was intentionally given the false impression that it was a bargain, or purchased at the best-possible price, or was one of just a few tickets available, and then arrives to an event only to discover that it has been cancelled or postponed, the fan is left standing at the door feeling frustrated, angered, confused, and disappointed. And it is Stone Church who alone must devote the time and resources dealing with the consequences of the fan's disappointment at the venue's doors.  The negative financial and reputational effects of this not-infrequent occurrence attaches to every completed transaction of this kind, and can be identified from Plaintiff's ticketing data, which show each order in which the buyer-of-record is a reseller rather than the attending fan.

### iii.  Lessening of Plaintiff's Goodwill and Reputation

37.    Plaintiff's goodwill and reputation continue to suffer as a result of StubHub's false advertising tactics. Because the resellers are anonymous, and StubHub's terms and conditions prohibit buyers from directly contacting the resellers, whatever problems a buyer might encounter with a ticket – they discover it is vastly overpriced, or the reseller doesn't actually own it, or it's for the wrong date, or the ticket is no longer valid by the selected showtime – will be brought first to StubHub.  However, based on several publicly-available consumer complaints, as well as its own experiences with unhappy fans, Plaintiff believes StubHub is largely ineffective in genuinely resolving these kinds of issues while putting the consumer through a frustrating, time-consuming and typically fruitless exercise.

38.    Buyers' frustrations are therefore channeled to the venue.  Instead of devoting staff, time and resources to putting on the best possible event for the fan and the artist, Stone Church is forced to devote those resources to resolving customer complaints and ticket problems it had no role in creating – problems rarely encountered with all-in price tickets sold on its own website.

39.    Other examples of the consumer confusion stemming from StubHub's false advertising tactics include, but are not limited to:  (a) the fans who bought tickets to the July 22 Twisted Teens show at prices driven by StubHub's False Scarcity tactic arrive at Stone Church expecting a sold-out show justifying the high price they paid, only to be baffled and chagrined by a half-empty venue; (b) fans who bought tickets to the August 1 Billie Marten show at the StubHub advertised price because of the impression given by the False Superlative tactic become frustrated, embarrassed and confused when they show up to find the same tickets on sale at the Stone Church box office at their significantly-lower all-in price; (c) fans who because of the Fictitious Former Price tactic believed they were getting a bargain feel misled and annoyed when they arrive at the

15

August 1 Billie Marten show and discover from other concertgoers or the prices listed at the box office that not only did they not get a great deal, their ostensible bargain price was actually more than 50% higher than the all-in price. All of these examples erode consumers' trust when looking to buy event tickets, and this general deterioration in buyer trust of the ticket-buying process resulting from StubHub's false advertising tactics adversely impacts Stone Church, itself a ticket seller.

## V.    CAUSE OF ACTION (False Advertising – Lanham Act, 15 U.S.C. § 1125(a)(1)(B)

40.    Plaintiff incorporates by reference each of the allegations in the preceding paragraphs of this Complaint.

41.    StubHub is making false and/or misleading statements of fact about the availability of event tickets in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Those statements misrepresent the nature and characteristics of event tickets, and are literally false, impliedly false, or both. StubHub has misrepresented and continues to misrepresent ticket availability at the event level by falsely advertising that such tickets are scarce, despite the fact that primary sellers like Stone Church have ample or sufficient verifiable inventory of tickets at all-in prices. StubHub's false or misleading statements of fact include, but are not limited to, statements such as "only 4% of tickets left!" or "Last Tickets!" or "only 3 tickets left at this price!" and the other types of statements detailed in this Complaint as exemplars of Defendant's false advertising practices.

42.    Each of StubHub's false and/or misleading statements are being intentionally made in the context of a commercial advertisement or promotion on the company's own platforms, and made with the purpose of influencing a potential ticket-buyer's purchasing decision by creating and disseminating messages and signals of false scarcity.

43.    StubHub knows (or should know) that its statements and/or advertising and promotion activities regarding ticket availability are false, misleading and/or deceptive. *See supra*

16

¶¶ 20 – 22 (allegations about the company's use of tooltips).

44.    StubHub's false and/or misleading statements have actually deceived, or have the tendency to deceive, a substantial segment of its intended audience about matters, including the availability and price of event tickets, that are material to that audience's purchasing decisions.  If unchanged, StubHub's false and/or misleading statements will continue to materially deceive its intended audience's future decision-making.  The fact that StubHub earns substantial fees from its website and app transactions means that it is commercially motivated to artificially boost marketplace activity by permitting speculative listings, and purposefully creating misperceptions of scarcity through the false advertising mechanisms alleged above.

45.    StubHub's website and applications are offered in interstate commerce and within all U.S. states and territories.  Similarly, StubHub's false and/or misleading claims were and are made in commercial advertising and promotion within interstate commerce.

46.    As a direct and proximate result of StubHub's false and/or misleading statements of fact in advertising event tickets, Plaintiff has been and will continue to be injured.  StubHub's false and/or misleading advertising statements have caused, and will continue to cause, Plaintiff's business to suffer lost sales and lost profits, as well as continuing damage to Plaintiff's goodwill and reputation with its customers.

47.    Plaintiff's immediate and irreparable injuries have no adequate remedy at law, and Plaintiff is entitled to injunctive relief and up to three times its actual damages, and an award of StubHub's profits, as well as costs and Plaintiff's reasonable attorney fees pursuant to 15 U.S.C. §§ 1116 – 1117.

## VI.    <u>RELIEF REQUESTED</u>

**WHEREFORE,** Plaintiff respectfully requests that the Court:

(a)  Order Defendant StubHub to:

    i.  Clearly and conspicuously disclose the availability of event tickets on its platforms;

    ii.  Clearly and conspicuously disclose that the event tickets advertised on its platforms, and any scarcity of such tickets, represent tickets available on StubHub's platforms only, and does not represent the totality of tickets available for that event;

    iii.  Clearly and conspicuously disclose the all-in price of event tickets on the section or sections of the StubHub platforms where those tickets are first advertised to potential buyers, including, but not limited to, the landing or search-result page/screen; and

    iv.  Clearly and conspicuously disclose that tickets listed on StubHub may also be available from primary sellers, including Stone Church and similar venues.

(b)  Award Plaintiff, in amounts to be assessed by the Court or at the Court's direction: (i) up to three times any actual damages Stone Church has sustained, and (ii) StubHub's profits;

(c)  Award Plaintiff the costs of this action, and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a); and

(d)  Grant such other further relief as the Court may deem equitable and appropriate.

Dated: August 10, 2026

Respectfully submitted,

*/s/ Matthew P. McCahill*
Matthew P. McCahill
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
(212) 687-1980
mmccahill@kaplanfox.com


*Counsel for Plaintiff FSO, LLC* d/b/a *Stone Church*

19